**Marina N. Oswald PORTER et al.**

v.

**UNITED STATES of America.**

Civ. A. No. 3–2282.

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 21, 1971.

Lyne, Klein & French, by Erich F. Klein, Jr., Dallas, Tex., for plaintiffs.

L. Patrick Gray, III, Asst. Atty. Gen., Irwin Goldbloom, Atty., Dept. of Justice, Washington, D. C., Eldon B. Mahon, U. S. Atty., N. D. Tex., Kenneth J. Mighell, Asst. U. S. Atty., N. D. Tex., Dallas, Tex., for defendant.

## MEMORANDUM DECISION

ESTES, Chief Judge.

In this action Marina N. Oswald Porter, widow of Lee Harvey Oswald, seeks compensation for the taking of certain property by the United States pursuant to Public Law 89–318, 79 Stat. 1185. This statute, enacted November 2, 1965, provides for condemnation by the United States of any item of evidence considered by the President's Commission on the Assassination of President John F. Kennedy (hereinafter called the "Warren Commission") after a determination by the Attorney General of the United States that preservation of the item is in the national interest. The Warren Commission concluded that the shots which killed President Kennedy were fired by Lee Harvey Oswald.

Public Law 89–318 provides:

" . . . [I]t is hereby declared that the national interest requires that the United States acquire all right, title, and interest, in and to, certain items of evidence, to be desig-nated by the Attorney General pursuant to section 2 of this Act, which were considered by the President's Commission on the Assassination of President Kennedy (hereinafter referred to as 'items'), and requires that those items be preserved by the United States.

"Sec. 2. (a) The Attorney General is authorized to determine, from time to time, which items should, in conformity with the declaration contained in the first section of this Act, be acquired and preserved by the United States. Each such determination shall be published in the Federal Register.

"(b) Whenever the Attorney General determines that an item should be acquired and preserved by the United States, all right, title, and interest in and to, that item shall be vested in the United States upon the publication of that determination in the Federal Register.

\*　　\*　　\*　　\*　　\*　　\*

"Sec. 3. The United States Court of Claims or the United States district court for the judicial district wherein the claimant resides shall have jurisdiction, without regard to the amount in controversy, to hear, determine, and render judgment upon any claim for just compensation for any item or interest therein acquired by the United States pursuant to section 2 of this Act; and where such claim is filed in the district court the claimant may request a trial by jury: *Provided,* That the claim is filed within one year from the date of publication in the Federal Register of the determination by the Attorney General with respect to such items."

On Tuesday, November 1, 1966, by publication in the Federal Register, Vol. 31, No. 212, pp. 13968–74, of the Attorney General's determination, the United States ("Government") acquired title to the items of personal property for which plaintiffs now seek just compensation. The property consists mainly of the personal effects of Lee Harvey Oswald in

the form of personal letters, a diary, family photographs, marriage license, the contents of Oswald's wallet, etc.

The issue to be determined by the Court is what amount of money is just compensation to the plaintiffs for the property taken by the Government.

On September 16, 1968, pursuant to Rule 53, F.R.Civ.P., William B. West, Esquire, was appointed Special Master for the purpose of hearing evidence and making findings as to the value as of November 1, 1966, the date of taking of the property here in controversy. The Court instructed the Special Master that the property should be valued in its condition on that date and that any manuscript items which were published in the reports of the proceedings of the Warren Commission should be valued as published material.

The Special Master found that the fair market value of the property involved was, as of November 1, 1966, $17,729.37. A jury having been waived, the Court approved the Special Master's Report and adopts the Special Master's findings as to the property's fair market value on November 1, 1966—but this does not mean plaintiffs are entitled to recover $17,729.37 as just compensation for the property.

It has been stipulated that the case should be determined by the Court on only the evidence before the Master.

The parties stipulated that the "market value of items of personal property similar in kind to those items which are the subject of this action . . . is $3,000.00" [Pretrial Order No. 1, ¶ 7(e)]. It is apparent, and the Court finds, that the $17,729.37 valuation as of November 1, 1966, reached by the Special Master, includes as an element the enhancement of value in the amount of $14,729.37 resulting from its association with Lee Harvey Oswald and the assas-

sination of President Kennedy on November 22, 1963.

Plaintiffs cite the decision of the Supreme Court in United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), stating that "just compensation" is "the full and perfect equivalent in money of property taken," so that the owner will "be put in as good position pecuniarily as he would have occupied if his property had not been taken." But in that decision the Court did not apply "fair market value" as the measure of "just compensation," at 373, 63 S.Ct. at 279 and it held that equity required certain elements of market value to be excluded from an award of just compensation.

The circumstances of this case require that the elements of fair market value of the property involved here resulting from association of the property with the assassination of the President must be excluded from the measure of just compensation. The nation and its people should not be required to pay a bounty for items of evidence upon which the Warren Commission based its report. There is little doubt that the Commission's investigation was essential to the security of the nation and was conducted with deliberate speed. The right of the United States to condemn the property has not been challenged.

To allow an award above the $3,000.00 stipulated value would create in a depraved mind comtemplating the destruction of the life of one of this nation's high officials an additional incentive for the assassination because the crime assuredly would result in the enrichment of the assassin's spouse or other beneficiary resulting from the enhanced value of his possessions. Neither the Constitution of the United States nor any law or principle of equity requires any such result.

The just compensation which plaintiffs are entitled to recover in this action is the sum of $3,000.00.